(No. 27488.—

STOLZE LUMBER COMPANY *et al.*, Appellants, *vs.* WILLIAM
G. STRATTON, State Treasurer, *et al.*, Appellees.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

WARNOCK, WILLIAMSON & BURROUGHS, of Edwards-
ville, and CATRON & HOFFMAN, of Springfield, for ap-
pellants.

GEORGE F. BARRETT, Attorney General, (HARRY L.
ARNOLD, and WILLIAM C. WINES, of counsel,) for ap-
pellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs, appellants, who are engaged in the business
of selling building materials and fixtures to construction
contractors, filed a complaint in the circuit court of San-
gamon county to restrain appellees, State Treasurer and
the Director of the Department of Finance, now known as
the Revenue Department, from transferring to the gen-
eral revenue fund of the State, certain monies paid under
protest. These funds were assessed as a tax under the Re-
tailers' Occupation Tax Act. In their complaint they con-
tended they are not liable for this tax and that the amend-
ment of 1941 to section 1 of the Retailers' Occupation Tax
Act, by which the Revenue Department has sought to levy
this tax against them, is an invalid enactment. The circuit
court dismissed their complaint, holding the amendment
valid and that the tax was properly assessed, but continued
in force, pending final disposition of this appeal, the tem-
porary injunction theretofore entered.

A stipulation of fact was filed from which the follow-
ing facts are shown: Plaintiffs, appellants, are dealers in
building material and engaged in the business of selling
such materials and fixtures to contractors and subcontract-
ors, which materials subsequently enter into the construc-
tion of buildings or other projects, and become an integral
part thereof. The contractor who purchases these materials
either enters into a contract with the owner of the premises,

whereby the former furnishes all the material, labor, skill and supervision for the completion of a structure, in accordance with plans and specifications, for a stipulated price, or a contract is made between the contractor and the owner of the lot on what is known as a cost-plus basis, whereby the cost of the materials, labor and other charges, plus the contractor's percentage, determine the contract price. The contractor buys the material from a materialman under a transaction solely between him and such materialman. The latter has no contract with the owner of the premises. The title to the material passes to the contractor upon delivery and, when it is incorporated into the structure built, the title to such material passes from the contractor to the owner.

The Department of Revenue, then Department of Finance, hereinafter referred to as the Department, required of appellants the payment of an occupation tax in accordance with rule 6 promulgated by it, under section 1 of the act as amended. The tax was paid under protest and this action brought to prevent its being turned over to the State Treasury, and for a refund.

The amendment of 1941, to which appellants object, was made by adding to section 1, the following: " 'Use or consumption,' in addition to its usual and popular meaning, shall be construed to include the employment of tangible personal property by persons engaged in service occupations (including construction contracting and other service occupations of like character,) trades or professions, in the rendering of services, where as a necessary incident to the rendering of such services, transfer of all or of a part of the tangible personal property employed in connection with the rendering of said services is made from the person engaged in the service occupation (including construction contracting and other service occupations of like character,) trade or profession, to his customer or client." Ill. Rev. Stat. 1941, chap. 120, par. 440.

Rule 6 promulgated by the department, so far as it affects materialmen, contractors and subcontractors, is as follows: "Persons who sell building materials, supplies or fixtures to contractors which are used or consumed by such contractors in the rendition of services under contracts to construct, alter, repair, improve or renovate structures on or improvements to real property are making sales for use or consumption and incur Retailers' Occupation Tax liability. Contractors do not incur Retailers' Occupation Tax liability with respect to their contract receipts. The word 'contractor' as used herein includes persons engaged in the business of constructing, altering, repairing, improving or renovating structures on or improvements to real property. General contractors and subcontractors are deemed to be 'contractors' for the purpose of this rule. The class of contractors to which this rule applies includes, but is not limited to, such persons as building, electrical, plumbing, heating, painting, decorating, ventilating, paper hanging, sheet metal, bridge, road and roofing contractors. Contractors, in addition to being engaged in the service occupation of constructing, altering, repairing, improving or renovating structures on or improvements to real property, may also be engaged in the business of selling tangible personal property for use or consumption, either as building supply dealers or otherwise. With respect to this type of activity they incur Retailers' Occupation Tax liability measured by the gross receipts realized from such sales."

The same factual situation appears in this case as in *Material Service Corp.* v. *McKibbin,* 380 Ill. 226, which held materialmen not liable for this occupation tax. That case was decided under the 1939 Retailers' Occupation Tax Act. The question involved here is whether the amendment in 1941, above set out, is a valid enactment. It is conceded that if it is, appellants are liable for the tax. It is contended, however, that the amendment is inconsistent with the purpose of the act, declares that to be a

fact which is not a fact, and contravenes section 13 of article IV of the constitution in that it creates a second subject matter within the act, not expressed in the title and inconsistent therewith.

The title of the act is: "An Act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." This title has not been amended since its original adoption in 1933. (Ill. Rev. Stat. 1941, chap. 120, p. 2660.) That the act is a retailers' occupation tax act is shown not only by its final section declaring it is to be so known, but is also demonstrated by various sections thereof.

The only section containing a taxing provision is section 2, which imposes a tax on those "engaged in the business of selling tangible personal property at retail." Section 2a requires the registration of those engaged "in the business of selling tangible personal property at retail in this State." Section 2½ authorizes the Department to issue tokens to be sold "to persons engaged in the business of selling tangible personal property at retail in this State." By section 3 every person "engaged in the business of selling tangible personal property at retail in this State" is required to make a return to the Department each month. Section 5 provides the penalty for failure by "any person engaged in the business of selling tangible personal property at retail" to make his return or pay the tax imposed. Section 5a provides a lien for such tax. Section 5b requires the recorders of deeds of each county to keep a file labeled "Retailers' Occupation Tax Lien Notices," with an index, in which he shall enter the name and last known business address of the retailer named in the notice. Section 5c provides for release of such lien "to the extent that the amount of such lien is paid by the retailer whose property is subject to such lien." Section 5f provides for distraint and for sale to enforce that lien and for a notice to "such retailer." Section 7 requires "every person engaged in the

business of selling tangible personal property at retail in this State" to keep a record therein described. Section 12½ requires a bond of itinerant vendors "engaged in the business of selling tangible personal property at retail in this State." Section 13 provides a penalty against any person "engaged in the business of selling tangible personal property in this State" who fails to make a return or to keep books or records, or who makes a fraudulent return. And finally, section 14 declares "This Act shall be known as the 'Retailers' Occupation Tax Act'." None of these sections were amended in 1941 in the particulars just referred to.

Nothing in the title or body of the act contemplates the taxing of any business other than that of selling tangible personal property at retail. The definition of "sale at retail," both before and after section 1 was amended in 1941, declares that such sale shall be "any transfer of the ownership of or title to" such property "to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." The amendment of 1941 does not substitute a new definition for "sale at retail" nor for "use or consumption," but seeks to add to the commonly known definition of "use or consumption," a new and additional definition, at the same time retaining their settled, popular meaning. It thus seeks to change the scope of sales at retail to include transfers or sales that are made for resale where the thing sold is employed by the classes of persons therein named in rendering service. Though the definition of sales at retail still retains the exclusion of sales which are made "for resale in any form as tangible personal property, for a valuable consideration," and though the third clause of section 1 still provides: "Sales of tangible personal property, which property as an ingredient or constituent goes into and forms a part of tangible personal property subsequently the subject of a 'sale at retail,' are not sales at retail as defined in this Act," yet the amendment seeks to include

the business of making sales thus definitely excluded by the definition of retail sales given in section 1.

The transfer of property from the contractor to the owner contemplated in the amendment, is clearly a transfer in some form for a valuable consideration. (*Bradley Supply Co.* v. *Ames,* 359 Ill. 162; *Material Service Corp.* v. *McKibbin,* 380 Ill. 226.) It is clearly apparent therefore that this amendment introduces an inconsistency in the Retailers' Occupation Tax Act and evidences an intent to call that a retail sale which not only the statute itself declares shall not be such, but which cannot, in view of the purpose of the act and the settled meaning of the term, be so defined. It is recognized that the General Assembly may make reasonable definitions of terms found in an act, and that such definitions will, for the purpose of the act, be sustained. But it is also well settled that it may not declare that to be a fact which is not a fact. (*Carolene Products Co.* v. *McLaughlin,* 365 Ill. 62; *Winter* v. *Barrett,* 352 Ill. 441.) Both the title and the provisions of the act relate to a tax upon persons engaged in the business of selling tangible personal property "to purchasers for use or consumption." "To purchasers for use or consumption," must, both by commonly understood meaning and by the contruction which this court has given to the language of the act and its title, be construed to mean, for use or consumption by such purchasers. Such language must also mean a sale where the article sold is not to be, in any form, transferred or resold for a valuable consideration, since such a sale would not be for the use or consumption of such purchaser, as the title and the act provide.

Because of the comprehensive review of the numerous questions and their decision which have arisen under this act, given in the *Material Service Corp. case* cited, it is unnecessary to again review those holdings. That case represents the law on the subject prior to the amendment

of section 1 in 1941. The question here is: What effect does that amendment have on the construction of the act as heretofore given it?

It must be borne in mind that we are not here dealing with an independent act declaring the business of materialmen or of contractors subject to an occupation tax. Such question is not before us and is not considered. The question here is, whether, by inserting this amendment in the existing act, there has been injected a subject matter inconsistent with the rest of the act and with its title.

Whether the subject expressed in the title of an act shall be general or specific, is a matter which rests in the discretion of the General Assembly. It may adopt a general subject or it may limit the subject expressed in the title to any extent it sees fit. If the title of an act be a general one, the General Assembly may incorporate as many provisions in the act as it deems necessary. Such provisions may be diverse, if not inconsistent with or unrelated to the general title of the act. (*City of Litchfield* v. *Thorworth,* 337 Ill. 469.) If the title is so restricted that it does not include an entire subject but a particular branch thereof, provisions not within that particular branch, though germane to a general subject, cannot be sustained as within the scope of the title. So, if the title to this act is not made broad enough to include the subject of taxing the business of selling for resale or retransfer, an amendment providing for taxing such business is not within the scope of the title and contravenes section 13 of article IV of the constitution. (*People ex rel. Gage* v. *Village of Wilmette,* 375 Ill. 420; *People ex rel Stuckart* v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill. 327; *Rouse* v. *Thompson,* 228 Ill. 522.) A title such as "relating to revenue," or as the "Criminal Code," is general, and any subject matter bearing any relation to it may properly be included under such title. (*People* v. *Vil-*

*lage of Wilmette,* 375 Ill. 420.) The title to this act has to do only with a specific branch of revenue, that is, the taxing of the business of making retail sales.

Appellants argue that the words "use or consumption," as defined by the amendment, in effect and in fact place a tax on the business of selling at wholesale, while the act is limited to the business of selling at retail; that prior to the amendment the act applied to but one class of persons, and it is sought by the amendment to make it apply to two. If the amendment, by the added definition of "use or consumption," results in extending the tax to a class of persons not included in the original act and not consistent with the title and purpose thereof, such amendment must be said to constitute a subject matter not included in the title of the act. The definition of the term "wholesale," as given by standard lexicographers, is: "selling or sold to retailers or jobbers rather than to consumers." (Webster's New International Dictionary.) This court pointed out in *Material Service Corp.* v. *McKibbin,* 380 Ill. 226, that "Evidence of a sale of personal property at retail is a necessary element to the establishment of a tax," citing *Mallen Co.* v. *Department of Finance,* 372 Ill. 598, and *Franklin County Coal Co.* v. *Ames,* 359 Ill. 178. In the *Franklin County Coal Co. case* it was pointed out that "Retail sales have been defined as sales to consumers rather than to dealers or merchants for resale," citing *Great Atlantic & Pacific Tea Co.* v. *Cream of Wheat Co.* 227 Fed. 46, and *Mennen Co.* v. *Federal Trade Com.* 288 Fed. 774.

Appellees argue that the amendment renders but one class of persons subject to the act, that is, those engaged in selling tangible personal property for use or consumption or at retail, and that this is so because, under the amended definition of use or consumption, all persons affected by it are deemed to be engaged in such retail business. Appellees' counsel in their brief state that this amend-

ment creates an entirely new statute in which materialmen are specifically mentioned, and by which act the tax is expressly imposed upon them with respect to their sales to contractors. They say, also, that "use or consumption" has not theretofore been defined in the act, and since the title to the act refers to sales for use or consumption, the amendment is within the scope of the title and is germane. It must be borne in mind, however, that, as hereinbefore pointed out, the clear intention of the General Assembly in so entitling the act, was to refer to use or consumption of the purchaser. Therefore the mind would not, from those words, encompass "use or consumption" in someone else, other than the purchaser, as this amendment seeks to provide. The whole theory of the title, as shown by its language and as explained by the act itself, is to cover the subject of retail sales only, that is, sales not for resale in any form for a valuable consideration. Though a contractor may be said to employ, in building a house, tangible personal property which he has purchased from a materialman, such is not the "use" contemplated by the title. The user or consumer contemplated in the title does not consist of two classes of persons, one of whom, though not the ultimate user or consumer, employs the property for some purpose and then sells or transfers it to the ultimate consumer. The title contemplates, as the purchaser, the one who is the ultimate user or consumer. Such purchaser uses the stone in a building he owns but he does not consume it. He may both use and consume food, clothing and the like. In either case the sale to him is for his use or consumption. The user or consumer contemplated is the ultimate user or consumer, (*Material Service Corp.* v. *McKibbin,* 380 Ill. 226,) and whether the sales to contractors be considered sales at wholesale or something else, it is clear they are not sales at retail as contemplated by the title and the provisions of the act.

It follows that the amendment is inconsistent with the spirit and the wording of the act as shown both in its title and in its provisions. It will be noted that, as herein pointed out, the amendment does not give a substituted definition for "sale at retail" nor for "use or consumption" but gives the latter an additional definition contrary to the well-understood meaning of the words and inconsistent with the purpose and spirit of the act, as expressed in the title and in the body of the act. The rule, frequently announced in other jurisdictions, is that where conflict appears in simultaneously enacted provisions of an act, that which is in harmony with the spirit and purpose of the act will prevail and provisions inconsistent therewith will fall. (*Smith* v. *Board of Trustees Barnes City,* 198 Cal. 327, 245 Pac. 173; *State* v. *Mulhern,* 74 Ohio St. 363, 78 N. E. 507.) It was held in *Commonwealth ex rel. Roney* v. *Warwick,* 172 Pa. 140, 33 Atl. 373, that a definition of terms in an act contrary to their common meaning and contrary to the purpose and spirit of the act, cannot prevail against the language of the act consistent with its spirit and letter.

An amendment which seeks to apply the tax to those engaged in a business other than that of making retail sales, whether that business be called wholesale or by some other name, cannot be said to be included in the title to this act. This being true, appellants' contention that the amendment violates section 13 of article IV must be sustained and the amendment must be held invalid. It follows that the circuit court erred in dismissing the complaint. The decree is reversed and the cause is remanded with directions to grant the relief prayed.

*Reversed and remanded, with directions.*