(No. 36298.—

G. S. LYON & SONS LUMBER AND MANUFACTURING COMPANY, Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed June 14, 1961.—Rehearing denied Sept. 22, 1961.*

SCHAEFER and HOUSE, JJ., dissenting.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellant.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, and WEBBER, WEBBER & WELSH, of Decatur, (JAMES M. WINNING, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The Department of Revenue assessed taxes under the Retailers' Occupation Tax Act and related statutes against G. S. Lyon & Sons Lumber and Manufacturing Company, measured by its sales of building materials to real-estate developers or speculative builders. Contending that such sales are not within the statute, the company filed a complaint in the circuit court of Macon County for review under the Administrative Review Act. The circuit court agreed with the company, holding that it was entitled to a credit against the assessment for the amount representing the tax on such sales. The Department appeals directly to this court, the public revenue being involved.

The facts are not in dispute. The company is engaged in the business of selling building materials in Decatur, Illinois. During the period involved here, it sold materials to real-estate developers or speculative builders who incorporated them into structures on land they owned themselves. Such builders construct houses or other improve-

ments on land they own, and later sell the improved properties to prospective home owners and other buyers. In some of the instances the builders, prior to beginning construction or purchasing any materials, had made an oral agreement to sell the home to be built.

The trial court determined that the applicability of the act depends upon the intent or purpose of the sale and purchase, and held that since the builder intends to sell the home to be built, his purchase of materials is for the purpose of resale. The Department contends that because the materials are not resold as "tangible personal property" but as real estate, the sales made by the company to the builders were sales at retail for use and consumption, as contemplated by the act.

The retailers' occupation tax is imposed upon "persons engaged in the business of selling tangible personal property at retail." (Ill. Rev. Stat. 1959, chap. 120, par. 441.) The statute defines a sale at retail as "any transfer of the ownership of, or title to, tangible personal property to a purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." (Ill. Rev. Stat. 1959, chap. 120, par. 440.) To justify the assessment of a tax, therefore, two tests or conditions must be met: (1) the transfer must be for use or consumption, and (2) it must not be for resale in any form as tangible personal property. *Beatrice Foods Co.* v. *Lyons,* 12 Ill.2d 274; *Material Service Corp.* v. *Hollingsworth,* 415 Ill. 284; *Burrows Co.* v. *Hollingsworth,* 415 Ill. 202.

We think it is clear, as the Department points out, that where the material is used in constructing a house on land owned by the builder, the one who sells materials to him incurs the tax even though the builder intends to sell the house after it is completed. To take the initial sale out of the category of retail sales within the meaning of the act it is necessary that the contemplated resale be a sale of the property in its form "as tangible personal property." It is

obvious that building materials, after they have been used in the construction of a house, constitute real estate rather than personal property, and that they are not transferred to the homeowner in any form as tangible personal property when the house is subsequently sold. The sale of materials to the builder, therefore, is not for resale in any form as tangible personal property and the second condition of taxability is accordingly satisfied.

As to whether the sales of materials to the real-estate developers are "for use or consumption," the Department argues that the sales take the articles off the retail market, and that although the house or other structure is thereafter the subject of a sale, the materials themselves are not resold for a direct and specific consideration. We think the test relied upon by the Department, and announced by this court in *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55, is based upon the proper construction of the act. We observed, in the *Modern Dairy case,* p. 67, that "The title to this act describes sales 'to purchasers for use or consumption.' It is noted that the terms are in the disjunctive rather than the conjunctive, indicating that the legislature intended 'use' to mean one thing and 'consumption' something else. Considering the purpose of the Retailers' Occupation Tax Act, it is reasonable to assume the legislature intended the term 'use' to include any employment of a thing which took it off the retail market so that it was no longer the object of a tax on the privilege of selling it at retail."

The process or employment engaged in by a builder results in destroying the identity of the material as personal property and converting it into real estate. Using them for purposes of construction obviously takes the materials as such off the retail market, and since the act has no application to sales of real estate, the materials of which improvements are constructed can no longer be an object of the tax. It seems clear, in view of the purpose and intent of the act,

that who uses the structure, which, in turn, has been built or created by a use of the materials, is irrelevant. The personal property has been transformed by the process of building, and in every sense contemplated by the act it is used or consumed in the process of construction or fabrication. The sale to the builder is the last transfer of the materials as personal property, and is a sale for use or consumption within the meaning of the act.

The company argues that the builders are not the users or consumers because "each of the purchasers in this case was engaged in the business of building homes, not for use, but for resale." Such reasoning, like that which this court reconsidered and rejected in the *Modern Dairy case,* ignores the fact that the tax is not concerned with sales of "homes" but with sales of materials or other kinds of tangible personal property. Whether the builder uses the improved real estate as a home, or sells it to someone else, is immaterial. It is the building *material*—the tangible personal property—the use of which is in question, and it is plain that the one who uses it, in the sense of that term as construed in the *Modern Dairy case,* is the one who erects out of it the house or other structure.

The company quotes at great length from our opinion in *Stolze Lumber Co.* v. *Stratton,* 386 Ill. 334, where the terms "user" and "consumer" were held to refer to the ultimate user or consumer. The interpretation of those terms made in the *Stolze case* and in the earlier decisions relied on by the company is no longer the law. It was rejected in the *Modern Dairy case,* wherein we said, p. 65: "Reviewing our previous decisions and the actions of the legislature retrospectively, we have come to the conclusion that it was not the intention of the legislature to use the terms 'user or consumer' in the title of the act in the strict and narrow construction which this court placed upon those terms in the earlier cases culminating in the decision of the *Stolze Lumber Co. case.*"

When construed in the light of its purpose, the act contemplates that use or consumption of personal property which takes it off the retail market so that it is no longer an object of the tax. Under this test it is clear that a builder uses or consumes lumber and the like. He has no intention of reselling the lumber or the other items of construction material which he buys. He is not in the business of selling materials. He is in the business of using them to build houses: the business of contracting, or of selling houses. It is evident that the materials he buys are taken off the retail market and are no longer objects of the tax. It follows that their sale to him is a measure of the tax.

In our opinion this conclusion applies whether or not the builder has entered into a contract for sale of the real estate, either oral or written. The controlling factor in determining taxability is the purpose for which the material is bought, and in ascertaining this purpose the mere matter of who owns the land is of little significance. Whether the builder is a speculative real-estate developer intending to sell the improved real estate at a profit, or whether he is a contractor having undertaken to improve another person's property, his purpose in purchasing lumber and other materials is to use them, not to resell them. In either case the material, in the process of use, loses its identity as personal property, becomes real estate by accession and is no longer the object of a tax on the privilege of selling it at retail. The builder buys his material to use, and not to resell as personal property, whether the real estate belongs to him or to a third party at the time he is engaged in improving it.

We recognize that the result reached here is not in harmony with that arrived in *Material Service Corp.* v. *Hollingsworth,* 415 Ill. 284, upon which the lumber company relies. In that case the argument was made, as here, that the materials become real estate upon incorporation into the building, and are not transferred as tangible personal property. We rejected the argument because no reasons

were advanced in support of it, and because it had apparently been rejected in earlier cases, decided prior to the *Modern Dairy case*.

Upon reconsideration of the question we think that in this respect the decision in *Material Service Corp.* v. *Hollingsworth*, 415 Ill. 284, is not supported by sound reasons and can no longer be followed. The legislature must be presumed to have been aware of the well-recognized distinction between real estate and personal property, and it has clearly expressed its intention to exclude only where the contemplated resale is a resale of the property as personal property. In this case the lumber or other material, if it can be considered as having been bought for resale at all, was obviously bought for resale as real estate. It follows that the circuit court erred in reversing that part of the deficiency assessment measured by receipts on the sales in question here.

The lumber company contends that at the administrative hearing it was improperly precluded from offering various items described as "proof" of the existence of contracts for the sale of land between its customers and third parties. The proffered testimony, books and records are referred to only in a general manner, and it does not appear that any ruling on specific evidence has been preserved for review. In any event the alleged items of proof related to an issue which we have decided is immaterial. In view of our conclusion it is unnecessary to further consider the contention.

The judgment of the circuit court of Macon County is reversed, and the cause is remanded to that court with directions to enter judgment in accordance with the findings and decision of the Department of Revenue.

*Reversed and remanded, with directions.*

Mr. JUSTICE SCHAEFER dissenting:

In this case a very limited issue was submitted for decision. The opinion adopted by the court has gone far be-

yond that limited issue, and has said that the tax falls upon transactions which the Department of Revenue in its brief in this case conceded are not subject to the tax, and which the legislature has clearly indicated are not subject to the tax. The Department of Revenue has amended its regulations to reflect the views expressed in the opinion of the court. The net result is a tax imposed by this court rather than by the General Assembly, and Mr. Justice House and I therefore dissent.

The extent to which the court's opinion deviates from the existing law, as well as the extent to which it goes beyond the question submitted for decision, can most readily be shown by quotations from the Department's brief in this case.

*Material Service Corporation* v. *McKibbin,* 380 Ill. 226, decided in 1942, is the definitive case concerning both the taxability of the sale of building materials to construction contractors and the taxability of the transfer of those materials by the contractor to the landowner. The holding of that case is thus described in the brief of the Department: "In the *Material Service* case, this Court held that *where the contractors purchased materials for the construction of homes or other buildings for persons other than the contractors upon lands that the contractors did not own,* (1) the seller of fixtures and building materials did not incur the tax because the contractors 'resold' those materials to the owner of the lot by constructing the home or other building for him, wherefore the supplies sold to the contractors by supply houses were 'for resale'. But the court held that the contractors did not incur the tax because although they did, indeed 'resell' the material, thereby exempting their vendors, the supply houses, from the tax, they did so in the course of a 'service occupation,' construction contracting, and not as retail merchants." (Italics as in the Department's brief.)

The Department did not seek to bring about any change

in the basic position thus taken in 1942 and adhered to over the intervening years. The narrow issue that the Department raised in this case was stated in the following terms in the Department's brief:

" 'THE PLAINTIFF CORPORATION MADE SALES OF BUILDING MATERIALS TO REAL ESTATE DEVELOPERS, SPECULATIVE DEVELOPERS, WHO PURCHASED AND USED THE MATERIALS TO BUILD HOMES UPON THE DEVELOPERS' LOTS, WITH THE THEN INTENTION OF SELLING THE LOTS TO PROSPECTIVE HOME OWNERS. IT WAS NEVER THE INTENT OR PURPOSE OF THE DEVELOPERS TO RETAIN AND USE THIS PROPERTY FOR THEIR OWN USE.' IN SOME BUT NOT IN ALL 'INSTANCES THE BUILDERS HAD, PREVIOUS TO THE PURCHASE OR DELIVERY OF THE MATERIALS, ENTERED INTO A BONA FIDE WRITTEN CONTRACT OF SALE' OF THE HOME TO BE BUILT 'WITH A THIRD PARTY. AS TO THESE SALES, THE DEPARTMENT CONCEDES THAT THEY ARE NOT SUBJECT TO THE TAX.'

"BUT 'IN SOME INSTANCES THE CIRCUMSTANCES WERE THE SAME, BUT THERE WAS ONLY AN ORAL CONTRACT OF SALE TO THE THIRD PARTY. IN THESE INSTANCES THE DEPARTMENT CONTENDS THAT THE SALES ARE SUBJECT TO THE TAX. IN OTHER INSTANCES THERE WAS NO WRITTEN OR ORAL CONTRACT OF SALE AT THE TIME OF THE PURCHASE AND DELIVERY OF THE MATERIALS TO THE DEVELOPER, BUT THEREAFTER THE PROPERTY WAS SOLD' TO A PURCHASER OF THE HOME. 'HERE, TOO, THE DEPARTMENT CONTENDS THAT THE SALE BY PETITIONER IS SUBJECT TO THE TAX.'

"DO THE SALES OF BUILDING MATERIALS TO SPECULATIVE BUILDERS FOR THE CONSTRUCTION BY THE BUILDERS OF HOMES MEASURE THE ILLINOIS RETAILERS' OCCUPATION TAX WHEN (1) THERE IS NO CONTRACT BETWEEN THE BUILDER AND ANY PROSPECTIVE HOME OWNER AT THE TIME THAT THE MATERIALS ARE SOLD TO HIM AND THAT THE HOME IS BUILT OR (2) THERE IS ONLY AN ORAL AND HENCE WHOLLY UNENFORCIBLE CONTRACT FOR THE SALE OF THE HOME AT THAT TIME." (Underscoring as in the Department's brief; the quotations are from the judgment of the trial court in this case.)

Other portions of the Department's brief reiterate its position. It said:

"For all purposes relevant to a decision in this case, sales by materialmen and purveyors of building supplies for the construction of homes and buildings may be divided into four distinct classes:

"In the *first* class, the materials and supplies are sold to and paid for by a contractor who amalgamates them into a home or building upon the land of an owner who is not the contractor but who has employed the contractor to build the home or other building. In this class of cases, not involved in this case, this Court has held that the materialmen and supply houses do not incur the tax because the contractor 'transfers' the materials and supplies and therefore 'resells' them to the owner of the land *as tangible personal property*. They do not become real estate until they are incorporated into the home by incorporating them into a building that is constructed on the land. The Department does not attempt to impose any tax measured by such sales. *Material Service Corp. v. McKibbin*, (1942), 380 Ill. 226.

"In the *second* class of these transactions, the builder has sold or has at least entered into a definitive and enforcible written contract for the sale of a home (or super market or filling station or other edifice) with the purchaser. Such a contract transfers equitable title to the vendor, subject only to the vendor's right of forfeiture or right of foreclosure of a vendor's lien from any defaults in the payment of the purchase price. The contractor then builds the home for the purchaser or prospective vendee under a written contract with that purchaser. The Department concedes that such sales are to the builders as a contractor and that the gross receipts from those sales do not measure the Illinois Retailers' Occupation Tax. This type of transaction is not involved in this case." (Italics as in Department's brief.)

The third class of cases described in the Department's

brief are those in which the builder builds a home, upon land that he owns, at a time when he has no arrangement whatever for its resale. The fourth class is like the third, but includes those cases in which the builder has only an oral agreement, characterized by the Department as unenforceable, with the prospective purchaser. The contention of the Department as stated in its brief, is "that sales of building materials of these latter two classes result in the incidence of the Retailers' Occupation Tax."

The opinion of the court, however, has held that all four classes of transactions described by the Department are taxable, despite the Department's repeated concessions that the first two of them are not. It has done so without having heard any argument whatsoever as to the first two classes, and without mentioning *Material Service Corporation* v. *McKibbin,* 380 Ill. 226, the basic case which for years has governed the taxability of these transactions. And although the opinion of the court obviously goes beyond the issues that the Department submitted for decision, the Department adopted new regulations that purport to subject all four classes of transactions to the retailers' occupation tax.

The court's opinion proceeds upon two grounds. One of them is that "In this case the lumber or other material, if it can be considered as having been bought for resale at all, was obviously bought for resale as real estate." As to the first two classes of transactions it seems impossible to say that the building contractor transfers anything as real estate. By hypothesis he owns neither the land on which the building is built, nor the building that he builds. His statutory lien is a far cry from ownership. Real property is transferred by deed, and the contractor can not, and of course in fact does not, convey by deed the title to real property that he does not own. I would have no quarrel with the proposition announced in the opinion if it were

limited to the third and fourth classes, which were all that were before the court. But the opinion is not so limited, and the Department has not so interpreted it.

The other ground upon which the opinion is based is that the building contractor "uses or consumes" the materials that go into the building. Back in 1941 the General Assembly did enact such a definition of "use or consumption," applicable not only to building contractors but to all service occupations. But this definition was repealed in 1945, (Laws of 1945, p. 1278), and it has never been re-enacted. The text of this repealed provision, together with its history, which includes this court's decision holding it unconstitutional, (*Stolze Lumber Co.* v. *Stratton,* 386 Ill. 334,) is set forth in *Burrows Co.* v. *Hollingsworth,* 415 Ill. 202, at 210.

The only other relevant legislative changes since 1945 show an approach that contradicts the position taken in the opinion.

In 1955 the General Assembly amended section 1 of the act by adding a provision "that any person who is engaged in a business which is not subject to the tax imposed by this Act because of involving \* \* \* a construction contract to improve real estate, but who, in the course of conducting such business, transfers tangible personal property to users or consumers in the finished form in which it was purchased, and which does not become real estate, under any provision of a construction contract \* \* \* shall be considered to be engaged in the business of selling tangible personal property at retail to the extent of the value of the tangible personal property so transferred." (Ill. Rev. Stat. 1959, chap. 120, par. 440.) This provision is still in effect. As the Department's Regulations state, it refers to "gas or electric stoves, refrigerators, washing machines, portable ventilating units and other portable equipment of this kind." Part of its significance here is that it shows that the General Assembly has considered the problem, and has singled out for

taxability only transfers of portable equipment of the kind described. As to the many other kinds of materials and fixtures that are used in constructing a building, it made no change in the existing law, and the inference that no change was intended seems inescapable.

But more important than any inferences, however clear, is the fact that by this provision the General Assembly has stated explicitly that the "users or consumers" are not the construction contractors, but the persons for whom the buildings are built and to whom the materials are transferred by the contractors in the course of performing their contracts. The opinion of the court imposes the tax upon those who supply materials to construction contractors, in the first two classes of cases described by the Department, on the ground that the construction contractors are the users or consumers of the building materials. It does not mention the fact that this position flatly contradicts the position that the legislature has taken on this point.

The final item of legislation that contradicts the court's opinion was enacted in 1961. Construction contractors have often been described, both by the General Assembly and by this court, as persons engaged in a "service occupation." The seventy-second General Assembly has enacted a "Service Occupation Tax Act" which seems clearly designed to reach the first two classes of transactions described by the Department. It imposes a tax "at the rate of 3% of the cost price of all tangible personal property transferred by said servicemen either in the form of tangible personal property *or in the form of real estate* as an incident to a 'sale of services' under any contract * * *." (72nd General Assembly, S.B. 558, sec. 3. Italics supplied.) The legislature, however, has imposed its tax upon the construction contractor, while the tax imposed by the court in this case falls upon the supplier.

Mr. JUSTICE HOUSE concurs in this dissent.