(No. 22744.—

THE FRANKLIN COUNTY COAL COMPANY, INC. *et al.* Appellants, *vs.* KNOWLTON L. AMES, JR., Director of Finance, Appellee.

*Opinion filed December 20, 1934—Rehearing denied Feb. 12, 1935.*

. Essington & McKibbin, and Walter E. Beebe, for appellants.

Otto Kerner, Attorney General, (Montgomery S. Winning, and James G. Skinner, of counsel,) for appellee.

Mr. Justice Farthing delivered the opinion of the court:

The appellants, twenty-seven coal mining companies or individuals, filed suit in the circuit court of Cook county against Knowlton L. Ames, Jr., Director of Finance of Illinois, to enjoin him from enforcing against them two rules promulgated by the Department of Finance in its administration of "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption," approved June 28, 1933, in effect July 1, 1933, (Laws of 1933, p. 925,) the short title of which is, "Retailers' Occupation Tax act." The circuit court entered a decree dismissing the bill for want of equity, and the complainants have appealed.

The rules above referred to are as follows:

"Article 2. The test of a sale at retail is whether the sale is to a purchaser for use or consumption and *not for re-sale*. A sale is made at retail when it is made to a per-

son who does *not* purchase the goods for re-sale either in the form or condition in which purchased or made over or changed into or included in some form of tangible personal property for re-sale. Sales of goods which as ingredients or constituents go into and form part of tangible personal property for re-sale by the buyers are not within the act. If a sale is made of goods which are for re-sale by the buyer as anything *other* than tangible personal property, such sale is a sale at retail within the provisions of the act.

"In general, the tax is imposed upon all persons engaged in the business of selling tangible personal property to purchasers for use or consumption. It is intended to cover receipts from a sale which constitutes the last actual transaction prior to ultimate use or consumption.

"The quantities of goods sold or prices at which sold are immaterial in determining whether or not a sale is at retail within this act." * * *

"Special Rule No. 28—*Coal, coke, fuel oil, gas and other combustibles sold to industrial users.* Sales of coal, coke, fuel oil, gas and other combustibles, whether in car-load lots or other quantities, to persons who use or consume such substances in producing other tangible personal property or in the rendering of service, constitute sales at retail within the meaning of the Illinois Retailers' Occupation Tax act, provided that such coal, coke, fuel oil, gas or other combustibles do not become a constituent, component or integral part of the manufactured product."

On motion of the appellee the amended complaint was dismissed for want of equity. This appeal followed.

The appellants contend that they are operators of coal mines—that is, producers, and not retailers, of tangible personal property for use or consumption; that the legislature did not pass a producers' tax act; that their business is not subject to the act in question; that all coal sold, whether in car-load lots or to truck operators, if sold at the "mine price," is sold at wholesale, no matter who buys

it, and therefore their occupation to this extent is not taxable; that although where the appellants sell coal through coal yards such part of their business is subject to the tax, as to all other business done by them they are wholesalers and not retailers; that when they sell to manufacturers this branch of their business is not taxable because they claim the result would be double taxation, in that both the coal used and the manufactured products, under the ruling of the Department of Finance, would be required to pay the same tax.

The appellee contends that by engaging actively and continuously in selling coal to purchasers for use or consumption the appellants are engaged in the business of selling tangible personal property at retail, regardless of the price and the quantity sold to any one customer at a single sale. The appellee admits that the act does not apply where sales are made for re-sale.

The appellants contend that taxing statutes must be strictly construed and all reasonable doubts must be resolved against the State and in favor of the tax-payer. (*United States* v. *Merriam*, 263 U. S. 179, 68 L. ed. 240, 244; *People* v. *Noyes*, 295 Ill. 355.) However, "strict construction" is a relative and not a precise term. It is not the exact antithesis of "liberal construction." It does not consist in giving words the narrowest possible meaning of which they are susceptible. A strict construction is in no way violated if the words of a statute are given their full meaning. (*Biffer* v. *City of Chicago*, 278 Ill. 562, 571.) When the language of a statute is definite and clear in its meaning—*i. e.*, free from ambiguity—there is neither necessity nor authority for a resort to statutory construction. (*Sup* v. *Cervenka*, 331 Ill. 459, 461.) With these rules in mind and the plain definition of "sales at retail" adopted by the legislature and contained in the act, all that we need do is to determine whether the facts stated in the appellants' bill bring them within the act.

We have stated the title of the act and also the short title given it by the legislature. Section 2 of the act provides among other things: "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of two per cent (2%) of the gross receipts from such sales in this State of tangible personal property," etc. Section 1 defines a sale at retail, as follows: " 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for re-sale in any form as tangible personal property, for a valuable consideration."

The appellants do not attempt to say that their sales are occasional, but they insist that their business is producing and not selling, and that by reason of the quantity sold—car-load lots and more—to many of their customers, their business is that of wholesalers. They couple with this the claim that sales at the mine at the same price charged purchasers in car-load lots are also sales at wholesale.

The complaint shows that the appellants sell a large percentage of their output to consumers. In *Winter v. Barrett*, 352 Ill. 441, 463, in discussing whether farmers could be exempted from the first Retailers' Occupation Tax act, we held that such exemption created a lack of uniformity and that the act was therefore unconstitutional. We recognized that the business of farming includes the business of producing, but held that farmers who engage in the business of selling their produce to consumers are engaged in the business of selling tangible personal property at retail, just as a druggist is who compounds his own remedies for sale at retail to his customers. Both would be conducting the sort of business covered by this act, and the fact that both were producers does not change that part of their business which is made up of such sales. Nor does the fact that the appellants are producers—that is, engaged in the business of mining and preparing coal for

sale—have any bearing upon that part of their business which has to do with the sale of their product for use or consumption.

The appellants rely upon the decisions in *Texas Co. v. Amos,* 81 So. (Fla.) 471, *Chattanooga Plow Co. v. Hayes,* 140 S. W. (Tenn.) 1068, *Flint* v. *Stone-Tracy Co.* 220 U. S. 107, and *Commonwealth* v. *Thackara Manf. Co.* 156 Pa. St. 510, in support of their contention that the Retailers' Occupation Tax act does not apply to producers who sell their products as an incident of their main business of producing. These decisions involved statutes which dealt with certain specific occupations, such as merchants, dealers, etc., and on account of the differences in wording they are not applicable to the act before us. Moreover, there is no tax imposed upon the appellants as persons engaged in the business of producing. The tax is imposed upon them, if at all, because they are engaged in the occupation of selling tangible personal property at "retail," as the term is defined in this statute. If we were to construe the act so as to exclude them from it, a lack of uniformity would result and the act would be unconstitutional. This act is not limited to persons whose only business is keeping a store or otherwise disposing of personal property in small quantities for use or consumption at a given location, after having bought their merchandise, goods, wares or chattels from those who sell in large quantities. If anyone sells tangible personal property for use or consumption and not for re-sale, and does so not occasionally but as a business or occupation, regardless of how he acquires title to the thing sold or who has produced it, his occupation is covered by this act.

Turning to the contention of the appellants that theirs is a wholesale and not a retail business, this act defines sales at retail as "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for re-sale in any form as tangible per-

sonal property." It will be noted that no reference is made to the quantity of personal property sold at a given time. The title of the first Retailers' Occupation Tax act (Laws of 1933, p. 938,) was, "An act in relation to a tax upon persons engaged in the business of selling tangible personal property at retail," etc. The title to the present act is, "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." The title of the second act is broader than that of the first act. The appellee suggests that the legislature by changing the title sought to obviate a possible objection to this act that it restricted the tax to those occupations properly classified under a retail business, in the sense that "retail" applies only to selling in small quantities, by the piece and not in the original package, or in gross. By the omission of the words "at retail" from the title and the substitution therefor of the words "to purchasers for use or consumption," the legislature made certain that the definition of "sale at retail" in the present act is not limited by what was formerly contained as a part of the title. This leaves the definition within the scope of the title of this act, whereas had no change in the title been made it might well be contended that the definition adopted in the act was broader than a proper construction of "sale at retail," formerly contained in the title, would permit. It has the further result of making definite and certain the legislative intent that any persons who engage in the business of making retail sales as defined were to be taxed under this statute.

In *Reif* v. *Barrett,* 355 Ill. 104, we held that this act does not impose a tax on property but that it is a tax on occupations. In discussing the nature of the tax imposed we said at page 117: "In the case at bar, however, the subject of the tax is the privilege to engage in the business of selling tangible personal property to purchasers for use or consumption." And again, on page 120, we said: "They

pay a tax for the privilege of engaging in the occupation of a retailer of tanglible personal property sold for use or consumption by the purchaser. All persons falling within the class pay the same tax. * * * The legislature has the inherent power to tax the occupation of those persons engaged in the business of selling tangible personal property to purchasers for use or consumption."

Neither the language of the definition fixed by the legislature nor the language quoted from the *Reif case* shows that the quantity of goods sold is a determining factor in ascertaining what occupations are embraced within this act. If the business regularly carried on includes frequent, and not merely occasional, sales of tangible personal property to consumers for use and not for re-sale, that business falls within the class intended by the legislature to be taxed. Retail sales have been defined as sales to consumers rather than to dealers or merchants for re-sale, in *Great Atlantic and Pacific Tea Co.* v. *Cream of Wheat Co.* 227 Fed. 46, and in *Mennen Co.* v. *Federal Trade Com.* 288 id. 774.

The appellants cite *State* v. *Levitan,* 190 Wis. 646, 210 N. W. 111, and *Kentucky Consumers' Oil Co.* v. *Commonwealth,* 233 S. W. (Ky.) 892, as well as *Commonwealth* v. *Bay State Milling Co.* 167 Atl. (Pa.) 307, in support of their contention that the quantity sold determines whether a sale is one at wholesale or at retail. But those decisions are not persuasive or applicable here. The legislature determined what the term employed in the act should mean. It chose a definition that has been used before and is a reasonable one, and did not leave the term "retail" to be construed. Whether or not by reason of the quantities of coal sold by the appellants they are doing what might under different circumstances be called a wholesale business, so far as this act is concerned, when they sell, as they do, the greater percentage of their output, as they admit by their complaint, to consumers, their occupation is brought within the act, and they are required, therefore, to pay the tax im-

posed upon them for the privilege of engaging in such an occupation.

In contending that the act is unconstitutional, the appellants say that the short title, Retailers' Occupation Tax act, would not express the subject matter of the act if the department's construction of the act contained in the rules quoted be upheld. The short name given the act by the legislature in no way supplants the title of the act. It is a matter of convenience and is a thing that has been done before, as in case of the Workmen's Compensation act. If this contention be made seriously, we hold that it is the title itself, and not a convenient name contained in or created by the body of the act, that must be looked to in determining whether the constitutional requirements as to the title of a statute have been met.

The appellants say that if these rules are permitted to stand and are enforced, property will be taken without due process of law. They say that the act does not provide, either directly or indirectly, for a tax on all final sales of personal property to consumers without regard to quantity, whether such sales are made by producers, wholesalers or otherwise. In answer to this, the sales themselves are not taxed, since this is an occupation tax; and, moreover, retail sales, as defined, include all transfers for use or consumption and not for re-sale, regardless of the quantity of tangible personal property sold. No authorities are cited in support of the claim that the act is unconstitutional. The objection is not well taken.

No authority is cited in support of the further contention that an arbitrary and unreasonable classification results if coal mining companies be included with persons engaged in the business of selling tangible personal property for use or consumption and not for re-sale. The word "arbitrary" is defined in the case cited, (*Georgia Railroad Co.* v. *Mote,* 131 Ga. 156,) but no attempt is made to show that the decision in that case is in any way ap-

plicable to the case before us, and we cannot agree that the legislature has adopted an arbitrary or unreasonable means in determining the classification of the persons to be taxed, or that the rules in question promulgated by the Department of Finance, in so far as they affect the sales of coal in car-load lots and in truck-load lots at the mines at mine prices to consumers and not for re-sale, are arbitrary or unreasonable.

Since this is an occupation tax and not a property tax there is no merit in the contention of the appellants that double taxation is the result of this act. (*Winter* v. *Barrett*, 352 Ill. 441, 457.) Their argument is that they will be taxed upon the coal sold to manufacturers, and that manufacturers, in turn, will pay a tax upon their products. But we repeat that this is not a property tax, and that the tax is not to be paid if the sales are of tangible personal property which is to be re-sold in any form as tangible personal property. A similar objection was made in *Union Central Life Ins. Co.* v. *Lowe*, 349 Ill. 464, where a privilege tax was involved. We held in that case that an insurance company doing business under the statute there in question could not deduct premiums paid by it for re-insurance in determining the amount of the tax to be paid, and that in spite of this double taxation did not result.

As to the argument of the appellants that this tax will work a grievous harm to their business, it need only be pointed out that this is a matter for legislative consideration rather than for this court, and that the same argument is available to any business which is competitive. It was pointed out in the *Reif case* that "whether the person following such business makes a profit is wholly immaterial so far as his liability to pay the tax is concerned." Even though in some instances the appellants may not be able to pass the tax on to the consumers, this is by reason of competition, and is not such an incident as would support an allegation that the act imposing a tax upon the occupation

of appellants is unlawful or that the legislature did not intend to impose the tax upon them.

For the reasons we have set forth, the decree of the circuit court of Cook county in dismissing the appellants' amended complaint for want of equity is affirmed.

*Decree affirmed.*