(No. 31943.—

MODERN DAIRY COMPANY, INC., Appellee, *vs.* THE DEPARTMENT OF REVENUE *et al.,* Appellants.

*Opinion filed September 17, 1952.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, JAMES C. MURRAY, and A. ZOLA GROVES, all of Chicago, of counsel,) for appellants.

JOSEPH E. GREEN, MADIGAN & THORSEN, MICHAEL M. PHILLIPS, BLUM, JACOBSON & SHKOLER, and THOMAS G. BUGAN, (ROBERT THORSEN, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The Department of Revenue of the State of Illinois and Ernest C. Marohn, as acting director thereof, appeal to this court from a judgment of the circuit court of Kane County which held that appellee, Modern Dairy Company,

Inc., a corporation, was entitled to a credit memorandum for retailers' occupation tax paid by appellee on milk sold to the Chicago State Hospital for consumption by its patients.

The facts are simple and not seriously disputed. The appellee operates a dairy and is engaged in selling dairy food products at wholesale and retail in the city of Chicago. The Chicago State Hospital, a State institution, through the Division of Purchases and Supplies of the Department of Finance, during the period from August, 1944, through 1947, purchased milk from appellee on quarterly competitive bids. No tax was included in these bids. The milk was delivered to the institution, 900 to 1200 gallons daily, in ten-gallon cans. A very small amount of milk was sold to employees, about eight per cent, about which there is no dispute. The balance of the milk was consumed by the patients and employees of the hospital. The patients were mentally ill persons committed by the courts of Illinois and volunteer patients. The hospital made a maintenance charge for food, housing, laundry, etc., to the employees. Some of the patients performed services in the kitchens and dining rooms, and as housekeepers and janitors, without compensation. The evidence disclosed that appellee also sold its products to others at retail and at wholesale for resale. The wholesale prices were less than the retail and the bid prices to the hospital were less than the wholesale prices. The appellee had included all sales to the hospital in its monthly tax returns and paid the tax for which credit is now claimed.

On this evidence the Department found the appellee liable for the retailers' occupation tax on all milk sold to the hospital, except that actually sold to and paid for by the employees. The circuit court reversed the Department and entered judgment directing the Department to issue its credit memorandum for the full amount claimed. In its judgment the court found: "First: That a dairy com-

pany is not liable for Retailers' Occupation Tax on sales of milk to a State Hospital where the milk is transferred to patients for consumption. Second: That Section 1 of Retailers' Occupation Tax Act, and particularly the second paragraph thereof, which attempts to enlarge the definition of 'Sales at Retail,' is unconstitutional and void."

The Department contends, on this appeal, that this case is controlled by the recent decision of this court in *Fefferman* v. *Marohn*, 408 Ill. 542, wherein it was held that sales of textiles, clothing and clothing materials to State and county institutions for the use of their wards were sales at retail and not for resale, and, hence, were taxable.

The appellee contends that the act applies only to vendors who sell to purchasers who use and consume the property, and the purchaser here is not the user and consumer under the previous pronouncements of this court; and that if section 1 of the act as amended in 1941 is interpreted to include sales to purchasers who transfer the property to others for their use and consumption, then it is unconstitutional and void.

The appellants contend in reply that, as was stated in the *Fefferman case,* where the property purchased by a State institution was used in caring for its wards, that constituted a "use and consumption" contemplated by the act and, hence, no constitutional question would arise.

The question of what is "use and consumption" under this act has plagued the courts since the act went into effect. The first act, commonly known as the Sales Tax Act, was passed March 22, 1933. The title of that act was, "An act in relation to a tax upon persons engaged in the business of selling tangible personal property at retail, the disposition thereof and making certain appropriations in connection therewith." The constitutionality of this act was challenged in *Winter* v. *Barrett,* 352 Ill. 441, and it was held invalid because of certain unauthorized exemptions

and provisions in the act which attempted to delegate the power of the legislature in regard to appropriations.

Subsequently, on June 28, 1933, the legislature adopted the present act, which is entitled, "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." The constitutionality of this act was challenged in *Reif* v. *Barrett*, 355 Ill. 104, and it was found not violative of any of the constitutional prohibitions raised.

The act of 1933 provided " 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration. Transactions whereby the possession of the property is transferred but the seller retains the title as security for payment of the selling price shall be deemed to be sales." Ill. Rev. Stat. 1939, chap. 120, par. 440.

Clearly, it was the intention of the legislature to tax "sales," but a sales tax not being authorized by our constitution the tax was imposed upon the privilege of selling at retail. The title of the first act said "at retail" but to avoid possible contention that this limited the act to sales in small quantities and would not apply to sales in gross to consumers (*Franklin County Coal Co.* v. *Ames*, 359 Ill. 178, 184,) the title of the new act omitted "at retail" and described sales "to purchasers for use or consumption." It should be noted here, however, that while "at retail" was eliminated from the title of the 1933 act, that phrase was retained in the body of the act wherein it was defined as: " 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." It will therefore be seen that while the title of the act re-

quires a taxable sale to be to the purchaser for use or consumption, (as the legislature intended these terms to be construed,) this definition of "Sale at retail" imposed the additional requirement that the sale be "not for resale in any form as tangible personal property, for a valuable consideration." In other words, if "use or consumption" is given a broad and liberal construction, the title is broader and embraces more than the body of the act, which excludes "resale in any form."

This apparent discrepancy in the language of the title and the body of the act brought on a series of cases in which this court had to construe the meaning of "use or consumption" as used in the title of the act. In the absence of any definitions of the terms in the act itself we applied the ordinary and popular meaning of the words; "use" meaning a long-continued possession and employment of a thing to the purposes for which it is adapted, as distinguished from possession and employment that is temporary or occasional; and "consumption" as "destruction by use." (*Revzan* v. *Nudelman,* 370 Ill. 180; *Mallen Co.* v. *Department of Finance,* 372 Ill. 598; *C. & E. Marshall Co.* v. *Ames,* 373 Ill. 381.) This strict and narrow construction of these terms led to confusion. Applying this "use or consumer" test, it was held that vendors of leather goods to shoe repairmen (*Revzan* v. *Nudelman,* 370 Ill. 180,) of optical goods to optometrists (*American Optical Co.* v. *Nudelman,* 370 Ill. 627,) of medical supplies to hospitals and doctors (*Mallen Co.* v. *Department of Finance,* 372 Ill. 598,) and of building supplies to contractors (*Material Service Corp.* v. *McKibbin,* 380 Ill. 226,) were not subject to the tax because the vendees were not the ultimate consumers. On the other hand, the shoe repairmen, optometrists, doctors and contractors are not subject to the tax because the subsequent transfer by them is incidental to the furnishing of services. (*Babcock* v. *Nudelman,* 367 Ill. 626; *Huston Bros. Co.* v. *McKibbin,* 386

Ill. 479.) Additional doubt of the efficacy of the application of this strict and narrow interpretation of "use or consumption" was shown by the holdings that the sales of tissue, napkins, cups and soap to hotels (*Robertson Products Co.* v. *Nudelman,* 389 Ill. 281,) and sales of textiles, clothing and clothing materials to charitable, hospital and penal institutions (*Fefferman* v. *Marohn,* 408 Ill. 542,) were sales to the "user" even though it was conceded that the vendees were not the ultimate users or consumers of the articles.

In 1941, the legislature, in order to plug this gap and clarify the situation, amended section 1 of the act by inserting " 'Use or consumption,' in addition to its usual and popular meaning, shall be construed to include the employment of tangible personal property by persons engaged in service occupations * * *, where as a necessary incident to the rendering of such services, transfer of all or of a part of the tangible personal property employed in connection with the rendering of said services is made from the person engaged in the service occupation * * *, to his customer or client." (Ill. Rev. Stat. 1941, chap. 120, par. 440.) The constitutionality of this amendment was challenged principally on the ground that it violated section 13 of article IV of the constitution in that it imposed a tax on sales to purchasers who were not the users or consumers and was therefore not expressed in the title and inconsistent therewith. (*Stolze Lumber Co.* v. *Stratton,* 386 Ill. 334; *Huston Bros. Co.* v. *McKibbin,* 386 Ill. 479.) In the *Stolze Lumber Co.* case the court held the amendment violative of section 13 of article IV because, relying on the definition of "use or consumption" contained in the prior cases, the title contemplated, as the purchaser, the one who is the ultimate user or consumer. The holding, however, does not appear to rest on that reason alone. The opinion discusses the inconsistency of the amendment with the definition of a "sale at retail" as defined in the body of the act, and states, at page 344, "It follows that the

amendment is inconsistent with the spirit and the wording of the act as shown both in its title and in its provisions. It will be noted that, as herein pointed out, the amendment does not give a substituted definition for 'sale at retail' nor for 'use or consumption' but gives the latter an additional definition contrary to the well-understood meaning of the words and inconsistent with the purpose and spirit of the act, as expressed in the title and in the body of the act. The rule, frequently announced in other jurisdictions, is that where conflict appears in simultaneously enacted provisions of an act, that which is in harmony with the spirit and purpose of the act will prevail and provisions inconsistent therewith will fall." And further, "An amendment which seeks to apply the tax to those engaged in a business other than that of making retail sales, whether that business be called wholesale or by some other name, cannot be said to be included in the title to this act." This language indicates that the court's decision was based as much upon the fact that the amendment was inconsistent with the definition of sale at retail in the body of the act as it was upon the finding that it was beyond the scope of the title of the act.

Three consolidated cases involving sales of textiles, bedding, towels, gauze, bandage muslin, surgical instruments, rubber gloves and other items of a similar nature to the State of Illinois and Cook County charitable, hospital, and penal institutions came before the court in *Fefferman* v. *Marohn*, 408 Ill. 542. The vendors contended that the institutions sold, transferred or gave the merchandise to the patients and inmates who were the actual users and consumers and therefore the sales were not taxable. The Department contended that the sales were "for use and consumption and not for resale" even though the purchaser transferred the commodity purchased, provided it was not transferred for a direct and specific consideration. The court, relying upon *Robertson Products Co.* v. *Nudelman,*

389 Ill. 281, found that the purchasers were the users and consumers of the commodities as contemplated by the act but made the further observations: "Appellants argue, and we believe are supported by previous decisions on the subject, that what is meant by the buyers being the 'ultimate user and consumer' is that the buyer must not further transfer the commodity purchased for a consideration" (p. 546,) and further, on page 547, "We think it follows from a consideration of *Robertson Products Co. v. Nudelman*, 389 Ill. 281, and the opinions just cited, that a sale is one for use and consumption and not for resale, even though the purchaser transfers the commodity purchased, provided he does not transfer it for a direct and specific consideration." The taxpayers in the instant case contend that this decision was correct in finding that the institutions were the users and consumers of the articles purchased but that it was incorrect and inconsistent with all the previous cases construing ultimate user and consumer to include all purchasers who do not transfer the purchases for a direct and specific consideration. It does appear that the decision here could have been based on the simple finding that the institutions were in the analogous situation of the hotels using paper supplies and were in that sense the ultimate users and that the language used does extend the previous definitions of ultimate users and consumers.

The 1941 amendment urged by appellant here was not considered in the *Fefferman case*. This amendment provides, " 'Sale at retail' shall be construed to include any transfer of the ownership of or title to, tangible personal property to a purchaser, for use or consumption by any other person to whom such purchaser may transfer the tangible personal property without a valuable consideration." The taxpayer here contends that the title of the act restricts its application to sales to purchasers who are themselves the users or consumers and if this amendment is interpreted to apply to sales to purchasers who transfer

to others for use or consumption it brings in a subject matter not within the scope of the act and therefore in violation of section 13 of article IV of our constitution; that such interpretation would lack in uniformity in violation of section 1 of article IX; would grant special immunities in violation of section 22 of article IV of the Illinois constitution; and would violate the due-process and equal-protection clauses of section 1 of the fourteenth amendment to the constitution of the United States. The Department contends that under the authority of the *Fefferman case* the purchasers here are the users and consumers contemplated by the title to the act and therefore the constitutional question does not arise, but even if it did arise it was decided, although not discussed, in the *Fefferman case*.

We are therefore confronted in the instant case with the following questions: (1) Was the purchaser here the user or consumer of the milk furnished to its patients irrespective of the 1941 amendment? (2) If the amendment must be relied upon is it violative of any of the constitutional prohibitions as contended by the appellee?

We entertain no doubt that the instant situation involves a transfer by the purchaser to another without a valuable consideration. The fact that some of the patients performed services in the kitchens, dining rooms and as housekeepers and janitors cannot be regarded as a consideration for the milk they consumed. It is inconceivable that our State institutions would employ mental patients to perform menial services and pay them with a glass of milk. We regard such chores as being assigned solely for their therapeutic value to the patient and not as a business transaction between the institution and the patient.

It is obvious therefore that the answer to either or both of the questions here depends entirely upon what the legislature meant when it used the terms "user or consumer" in the title to the Retailers' Occupation Tax Act. If a broad and liberal definition of these terms was intended,

the purchaser here could be considered the user or consumer as contemplated by the act, and the amendment could reasonably be within the title of the act.

Reviewing our previous decisions and the actions of the legislature retrospectively, we have come to the conclusion that it was not the intention of the legislature to use the terms "user or consumer" in the title of the act in the strict and narrow construction which this court placed upon those terms in the earlier cases culminating in the decision of the *Stolze Lumber Co. case.*

As pointed out above, the legislature substituted "to purchasers for use or consumption" in the title of the 1933 act for "at retail" in the title of the first act to avoid the possible contention that the act would apply only to sales in small quantities and would not apply to sales in gross to consumers. This seems to indicate at the outset that the legislature was using these terms to describe a retail sale rather than with a specific intention to restrict the act to apply only where the purchaser was the actual physical consumer.

Then, following the court's construction of these terms in the *Revzan case,* and cases following it, the legislature passed the 1941 amendments which explicitly sought to define these terms in a broader and more liberal interpretation. After these amendments there certainly remains no question about the present legislative intention at least.

The object and purpose of the Retailers' Occupation Tax Act was to indirectly tax sales of tangible personal property by imposing a tax on the privilege of selling. To tax every sale would result in multiple taxation, so the legislature restricted the tax to the sale at the retail level. The question then is what is the meaning of use or consumption when the motive is to tax the privilege of engaging in the occupation of retail selling. Considered in this sense, it seems obvious that the legislature intended and the act contemplates the use or consumption of the property which took it off the retail market so that it would no longer be

an object of the tax. It seems equally obvious that who actually drinks the milk, eats the food, wears the clothes or uses the linens has no relation whatsover to the object and purpose of this act and the legislature would have had no reason to use the terms "use or consumption" in that sense.

The legislature has the power to make any reasonable definition of the terms in a statute, and such definitions, for the purpose of the act, will be sustained. (*Smith* v. *Murphy,* 384 Ill. 34; *Krebs* v. *Thompson,* 387 Ill. 471; *Bohm* v. *State Employees' Retirement System,* 404 Ill. 117.) Once the legislative intent is ascertained it should be given effect by the courts unless it is clearly in violation of some provision of the constitution, and captious and hypothetical reasoning should no longer be indulged. (*Foltz* v. *Davis,* 68 Fed. 2d 495.) When this court construes a statute and that construction is not interfered with by the legislature, it is presumed that such construction is in harmony with the legislative intent. (*Consumers Co.* v. *Industrial Com.* 364 Ill. 145.) Conversely, if the legislature, after the courts construe the terms used in an act, attempts by amendment to define those terms as used in that act, the reasonable presumption is that the court's construction was not in accord with the original intent of the legislature. (*Domarek* v. *Bates Motor Transport Lines, Inc.,* 93 Fed. 2d 522; *In re Hurle,* 217 Mass. 223, 104 N.E. 336.) It would then seem incumbent upon the court to reconsider its construction of the act and, if it appeared to be clearly at variance with the interpretation of the legislature, to harmonize the court's construction with the legislative intent.

In view of the original reason why the legislature adopted the phrase "to purchasers for use or consumption," in consideration of the purpose and motive of the legislature in passing the Retailers' Occupation Tax Act, the apparent irrelevance of physical consumption to that motive and purpose, the unquestionable efforts of the legislature to correct the court's construction of the meaning of the

terms, and the inconsistency of the court's construction of the meaning of the terms evidenced by the belabored decisions finding the purchaser the user or consumer when the purchases were admittedly actually consumed by another, we do not believe that the strict and narrow interpretation heretofore placed on these terms is in accord with the intention of the legislature, and are of the opinion it should no longer be applied.

The title to this act describes sales "to purchasers for use or consumption." It is noted that the terms are in the disjunctive rather than the conjunctive, indicating that the legislature intended "use" to mean one thing and "consumption" something else. Considering the purpose of the Retailers' Occupation Tax Act, it is reasonable to assume the legislature intended the term "use" to include any employment of a thing which took it off the retail market so that it was no longer the object of a tax on the privilege of selling it at retail.

The transfers described in the 1941 amendment clearly fall within this definition of the term "use" as contained in the title to the act, and this amendment is not beyond the scope of that title.

There remain the questions of constitutional uniformity, special immunities and due process. We find no merit in appellee's contentions on these points. It is true that the entire scheme of the act will make vendors liable for the tax on some sales to the institutions and not liable on other identical sales, depending upon whether the institution transfers to a paying patient or a charity patient. This is due to the purpose and entire scheme of the act, the intention being to make the tax fall upon the last transfer for a consideration. This intention is not discriminatory. It is not discriminatory to exempt sales incidental to the performance of services. Since the intent of the act to make the tax fall on the last sale has a reasonable basis and the classification of vendees who perform services is rea-

sonable and the act applies equally to all of the class, it satisfies the constitutional requirement of uniformity.

To support its contention that the imposition of the tax on the sales here in question would violate the equal-protection and due-process clauses, the taxpayer cites *Stewart Dry Goods Co.* v. *Lewis,* 294 U.S. 550, and *Hopkins* v. *Southern California Telegraph Co.* 275 U.S. 393. In the *Stewart case* the imposition of a gross sales tax which graduated as the sales increased was held violative of the equal-protection clause, and in the *Hopkins case* a tax which placed a greater burden on a telephone company which leased property than it did on a similar company owning its own property was also held unconstitutional as violating the equal-protection clause. We find insufficient analogy between the decisions therein and the facts of the instant case. Here, all members of a reasonably defined class who do business in a certain fashion are subject to an occupation tax. This tax is not on the gross business of a vendor, but on an individual sale of a certain type, and is not graduated on the whole amount of business as it grows. Nor is this tax discriminatory, as it obviously was in the *Hopkins case.* We can discern no lack of due process or equal·protection, as the act is obviously within the legislature's power, the tax and its measure are reasonable, and all who sell at retail within the definitions of the act are subject to the tax.

In view of the foregoing determinations, the judgment of the circuit court of Kane County is reversed, and the case remanded with directions to enter judgment in accordance with the findings and decision of the Department of Revenue.

*Reversed and remanded, with directions.*