(No. 32794.-

THE BURROWS COMPANY *et al.*, Appellees, *vs.* M. H. HOL-LINGSWORTH, Director of Finance, *et al.*, Appellants.

*Opinion filed May 20, 1953.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and RICHARD L. COOPER, of counsel,) for appellants.

MADIGAN & THORSEN, and FRED B. HOVEY, both of Chicago, (ROBERT THORSEN, of counsel,) for appellees.

SIDLEY, AUSTIN, BURGESS & SMITH, WILSON & Mc-ILVAINE, and KNAPP, CUSHING, HERSHBERGER & STEVENSON, all of Chicago, (WILLIAM H. AVERY, JR., R. CORWINE STEVENSON, CLARENCE E. FOX, EMERSON T. CHANDLER, and KENT CHANDLER, JR., of counsel,) *amici curiae.*

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

Acting upon its interpretation of our decision in *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55, the Department of Revenue has sought to impose the retailers' occupation tax upon sales of tangible personal property by suppliers to persons who retransfer such property in the course of "service occupations." In this case and the companion consolidated cases, *Material Service Corp.* v. *Hollingsworth,* No. 32795, and *Chicago Fire Brick Co.* v. *Hollingsworth,* No. 32796, the position taken by the Department is challenged.

The plaintiffs in this case are pharmaceutical companies and other supply houses, who sell medicines, bandages, dressings, splints, braces, and other medical supplies, as well as foods, to doctors and hospitals who apply or serve

these products to their patients. Sometimes patients are charged for each specific item used, and sometimes on the basis of a flat charge which includes all medical services and supplies. Some patients are "charity cases" and pay nothing for the care they receive.

The dispute over the taxability of sellers of medical supplies to doctors and hospitals has a long history. Prior to 1941, taxability was denied in *Mallen Co.* v. *Department of Finance,* 372 Ill. 598. In 1941, the rules of the Department were changed to impose a tax upon sales of medical supplies to doctors and hospitals. This change in the rules was based upon that portion of the 1941 amendment to section 1 of the Retailers' Occupation Tax Act which extended the statutory definition of "use or consumption" to the employment of tangible personal property by persons engaged in service occupations. (Laws of 1941, p. 1079.) This part of the 1941 amendment fell in *Stolze Lumber Co.* v. *Stratton,* 386 Ill. 334, and nontaxability of the medical suppliers was reaffirmed in *Huston Brothers Co.* v. *McKibbin,* 386 Ill. 479.

In the meantime, the plaintiffs instituted this action in the circuit court of Cook County. On November 22, 1944, that court entered a decree holding that under the *Stolze Lumber Co.* and *Huston Brothers Co. cases* the plaintiffs were not subject to the retailers' occupation tax on the basis of sales made to doctors and hospitals who retransferred the supplies to paying patients. When the Department took the position that the immunity provided by the *Huston Brothers Co. case* did not extend to sales to charitable institutions because the retransfers were without consideration, the plaintiffs filed a supplemental complaint, and by an order entered June 20, 1947, the circuit court extended its injunction to all sales to doctors and hospitals who retransferred the supplies to patients, whether or not the patients paid for the supplies. No appeal was prosecuted from the 1944 or 1947 decrees of the circuit court of Cook County.

After our decision in *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55, the Department promulgated Bulletin No. 11, which purports to impose the tax on sales by suppliers to persons engaged in service occupations who retransfer the property, whether or not the retransfer is for a valuable consideration. The defendants then filed motions in the circuit court to vacate the injunctive orders of 1944 and 1947. On November 20, 1952, the circuit court, on the basis of the *Modern Dairy Co. case,* entered an order vacating its 1947 injunction as to future sales of supplies to be retransferred without charge. The court refused, however, to vacate its injunction as to sales made prior to November 20, 1952, and ordered that the injunction continue in full force as to those prior sales. On December 18, 1952, the court found that the sales to doctors and hospitals who retransferred the supplies to paying patients were sales for resale and therefore were not taxable, and denied the defendants' motion to vacate the injunction order of 1944, pertaining to such sales. Defendants appeal from the order of the circuit court of Cook County entered December 18, 1952, and from that part of the order entered November 20, 1952, which leaves the injunction in effect as to sales for retransfer without charge which were made prior to the date of that order.

We shall first consider whether the tax applies to suppliers selling to persons engaged in service occupations who retransfer the products sold for a valuable consideration in connection with the rendition of services. Defendants take the position that *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55, compels the conclusion that sales to those engaged in service occupations are "for use and consumption" and "not for resale in any form as tangible personal property." Plaintiffs, on the other hand, contend that a retransfer for a valuable consideration is a "resale" which, by the terms of the statute, immunizes the supplier from the tax.

The Retailers' Occupation Tax Act (Ill. Rev. Stat. 1951, chap. 120, pars. 440 *et seq.*) is entitled, "An Act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers *for use or consumption.*" (Emphasis supplied.) The act (section 2) imposes a tax "upon persons engaged in the business of selling tangible personal property *at retail* * * *." (Emphasis supplied.) Section 1 of the act defines "sale at retail" to mean "any transfer of the ownership of, or title to, tangible personal property to the purchaser, *for use or consumption and not for resale* in any form as tangible personal property, for a valuable consideration." (Emphasis supplied.) "Sale at retail," however, is also defined to include "any transfer of the ownership of, or title to, tangible personal property to a purchaser, for use or consumption by any other person to whom such purchaser may transfer the tangible personal property without a valuable consideration."

*Modern Dairy Co.* concerned the taxability of a dairy which sold milk to a State mental hospital. The hospital transferred the milk without consideration to patients for consumption. We held that the dairy was subject to a tax measured by these sales. The terms of that portion of the 1941 amendment to the act, which defined "sale at retail" to include transfers "to a purchaser, for use or consumption by any other person to whom such purchaser may transfer the tangible personal property without a valuable consideration," were squarely applicable to the transactions before us. It was argued, however, that the amendment was invalid because it was not within the title of the act. In resolving that question, we traced the history of the act from its origin in 1933. We observed that the title of the act refers to persons engaged in the business of selling property to purchasers "for use or consumption" and noted that the term "sale at retail" does not appear in the title of the act. We then considered the decisions of this court

which had applied a strict and narrow definition to the words "use" and "consumption," and pointed out that those words are used in the disjunctive in the title of the act. "Reviewing our previous decisions and the actions of the legislature retrospectively," we concluded that "it was not the intention of the legislature to use the terms 'user or consumer' in the title of the act in the strict and narrow construction which this court placed upon those terms in the earlier cases culminating in the decision of the *Stolze Lumber Co. case.*" (413 Ill. at 65.) Defining the word "use" as including "any employment of a thing which took it off the retail market so that it was no longer the object of a tax on the privilege of selling it at retail" we held that the 1941 amendment, which defined sale at retail to include sales for retransfer without consideration, was within the title, was otherwise valid, and was applicable to the transaction before us.

Defendants' case rests largely upon certain statements made by this court in the *Modern Dairy Co. case.* We have examined those statements. In context they relate only to the position of the court with respect to the scope of the title of the act, and specifically to the proper definition to be given to the phrase "use or consumption" as it appears in the title. Thus, defendants stress the sentence "Considered in this sense it seems obvious that the legislature intended and the act contemplates the use or consumption of the property which took it off the retail market so that it would no longer be an object of the tax." (413 Ill. at 65-66.) When it is recalled that the problem in that case concerned the validity of the extended definition of "sale at retail" to includes sales where property was retransferred without charge—a problem which stemmed from decisions of this court which had unduly narrowed the scope of the act as expressed in its title—it is apparent that this statement related to the unsoundness of a narrow construction and the propriety of a broad definition of the phrase "use

or consumption" in the title of the act. Nothing in the opinion, however, suggests that the broadened definition of "use or consumption" in the title eliminates the tax liability tests set up in the body of the act.

. Taxability resulted in *Modern Dairy Co.* because the tax was imposed by the language of the statute. Before the tax falls on the transactions here involved the defendants must show not only that there is a sale "for use or consumption" as defined in the *Modern Dairy Co. case,* but also that the transaction is taxable under the statute. That burden has not been met in this case. The tax is imposed upon "persons engaged in the business of selling tangible personal property at retail in this State." (Section 2.) "Sale at retail" is defined as "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." (Section 1.) The sweep of the phrase "use or consumption" as it appears in the definition of a sale at retail is qualified by the following clause, which excludes sales for resale for a consideration. As the act reads, a person is not engaged in the business of selling at retail unless he transfers tangible personal property (1) for use or consumption and (2) not for resale in any form as tangible personal property. Both tests must be met to justify the imposition of the tax. This was pointed out in *Modern Dairy Co.*: "It will therefore be seen that while the title of the act requires a taxable sale to be to the purchaser for use or consumption (as the legislature intended these terms to be construed) this definition of 'Sale at retail' imposed the additional requirement that the sale be 'not for resale in any form as tangible personal property, for a valuable consideration.'" 413 Ill. at 59-60.

Referring to *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55, *Fefferman* v. *Marohn,* 408 Ill. 542, and *Robertson Products Co.* v. *Nudelman,* 389 Ill. 281, the de-

fendants assert that "this Court's three most recent pronouncements upon the general intendment and import of the phrase 'use or consumption,' leave no doubt that, whatever may be the implication of prior decisions, there is certainly no such 'resale of commodities' as will exempt the supply house from the tax unless the re-transfer is for a direct and specific charge and there is probably no such resale even though a direct and specific charge is made where the transfer is a minor incident of the rendition of services." We do not read those cases as formulating the broad proposition urged by the defendants. Two of the three cases involved subsequent retransfers without consideration and, contrary to the defendants' contention, expressly recognized that a retransfer for a valuable consideration exempts the prior sale. In the *Fefferman case* we stated that "Appellants argue, and we believe are supported by previous decisions on the subject, that what is meant by the buyer's being the 'ultimate user and consumer' is that the buyer must not further transfer the commodity purchased *for a consideration.*" (408 Ill. at 546.) The distinction between a gratuitous retransfer and one for valuable consideration was noted further in *Modern Dairy Co.* 413 Ill. at 67: "It is true that the entire scheme of the act will make vendors liable for the tax on some sales to the institutions and not liable on other identical sales, depending upon whether the institution transfers to a paying patient or a charity patient."

In *Robertson Products Co.* v. *Nudelman,* 389 Ill. 281, the supply house sold paper napkins, tissue, towels, cups, and plates to hotels and office buildings. We held the supplier subject to the tax because "No thought of transfer or resale is indulged. Hotels and office buildings are not in the business of selling paper napkins, tissue, cups, plates and the like, but they are in the business of running a hotel or an office building or the like. We are of the opinion it is in this sense that they may be said to consume these

articles. Nor is this to be confused with the materials used by contractors which go to make up a given object sold to a consumer. The items here considered are simply a part of the equipment of hotels and office buildings just as the contractor's tools are a part of his equipment." 389 Ill. at 286.

The single attempt by the legislature to impose the tax on suppliers making sales to persons engaged in service occupations who retransfer the supplies for a valuable consideration in connection with the rendition of services came in 1941. At that time the General Assembly added the following paragraph to section 1 of the act: " 'Use or consumption,' in addition to its usual and popular meaning, shall be construed to include the employment of tangible personal property by persons engaged in service occupations (including construction contracting and other service occupations of like character,) trades or professions, in the rendering of services, where as a necessary incident to the rendering of such services, transfer of all or of a part of the tangible personal property employed in connection with the rendering of said services is made from the person engaged in the service occupation (including construction contracting and other service occupations of like character,) trade or profession, to his customer or client."

That 1941 amendment came before this court in *Stolze Lumber Co.* v. *Stratton,* 386 Ill. 334. There it was held invalid because it was thought to go beyond the scope of the title under the restricted definition of "use or consumption" applied by the court and because it was inconsistent with the fundamental definition of "sale at retail" in section 1. "Sale at retail" has always required a sale (1) for "use or consumption" and (2) "not for resale in any form." In *Modern Dairy Co.* we specifically commented upon the two reasons for the result reached in the *Stolze Lumber Co. case* and upon reconsideration rejected only the first, hold-

ing that the narrow meaning attributed to the phrase used in the title was unwarranted.

Subsequent to the decision in the *Stolze Lumber Co. case,* the General Assembly repealed the invalidated amendment by re-enacting section 1 without the paragraph added in 1941. (Laws of Illinois, 1945, p. 1278.) It appears, then, that the only provision which sought to tax suppliers to service occupations which retransfer the property for a valuable consideration, is no longer in the act. The "gap" in the statute which was referred to in *Modern Dairy Co.,* as a result of which neither persons engaged in what have been characterized as "service occupations," nor those who sell to such persons, are subject to the tax, still exists under the present language of the statute.

The remaining question concerns the effect which should be given to the modification of the injunction. On November 20, 1952, the trial court set aside the original decree, in so far as it concerned future sales of medical supplies to doctors and hospitals who retransfer them without consideration. This action was taken on the basis of our decision in *Modern Dairy Co.* and the plaintiffs do not question its propriety. The defendants, however, have appealed from this ruling, contending that when the injunction was set aside a tax became due with respect to transactions of this type which had occurred prior to the date of modification of the injunction.

The defendants rely upon the general principle that a judicial decision, unlike a statute, is not prospective in its operation, but is expository of the law as the court declares it to exist at the time of the decision. The plaintiffs urge that a final injunction must be regarded as *res judicata* for the period prior to its modification, because to rule otherwise would nullify the effect of the injunction.

We have no doubt of the general soundness of the plaintiffs' argument. The injunction, so long as it remains

unmodified, is a continuing adjudication. That is the implication of Mr. Justice Cardozo's observation in *United States* v. *Swift & Co.* 286 U.S. 106, 119, where the power of a court of equity to modify or vacate an injunction was reaffirmed: "There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting." The same implication appears in *Smith* v. *Illinois Bell Telephone Co.* 270 U.S. 587, in which the Illinois Commerce Commission appealed from an order enjoining the enforcement of a rate schedule upon the ground that the effect of the decree was to prohibit the Commission from supervising the rates of the utility in the future. The court rejected this contention, saying: "* * * there is nothing in the decree, rightly construed, which attempts to curtail or could curtail the legislative or rate-making powers of appellants to proceed hereafter under the State law, subject to such limitations, if any, as may be required by the doctrine of *res judicata,* ordinarily applicable in such cases."

The same view of an unmodified injunction as a continuing adjudication was expressed by this court in *Illinois Central Railroad Co.* v. *Commerce Com.* 387 Ill. 256, 274, in describing the effect of an earlier decree enjoining interference with railroad rates: "Any attempt to apply that decree to a subsequent change in conditions or to a different service or rates, is governed solely by the rules of law applicable to the doctrine of *res judicata.*" To the same effect is *Minneapolis, St. Paul & Sault Ste. Marie Railway Co.* v. *Washburn Lignite Coal Co.* 40 N.D. 69, 168 N.W. 684. There the railroad succeeded in securing the modification of an injunction which had restrained the collection of

freight rates above those fixed by statute. It then sued the shipper to recover increased compensation for shipments made during the period the injunction was in effect. The court held that the injunction bound the railroad during the time it was in effect, saying: "* * * Were the rule otherwise, the injunction, which is merely a continuing expression of the judgment of the court that the statutory rate must be applied, is a judgment deprived of its force as an adjudication of the rights of the parties. The error of plaintiff's contention inheres in the failure to recognize the injunction as being the continuing expression of the court until such time as it may be modified or dissolved by a new judgment or decree. During such time, it is impossible that there could have been any other measure of the rights and obligations of the parties than that provided in the decree itself." By analogy, the same result would follow from the settled view that the erroneous character of a temporary injunction does not justify a violation of its provisions so long as it remains in effect.

It is true that *res judicata* and its kindred doctrines have been tempered in their application to tax cases, (Compare *Blair* v. *Commissioner of Internal Revenue*, 300 U.S. 5, with *Chicot County Drainage District* v. *Baxter State Bank*, 308 U.S. 371,) and that the underlying reason has been the inequity which would follow if one taxpayer were permanently protected by collateral estoppel from continuing exactions which would fall unimpeded upon others similarly situated. *Commissioner* v. *Sunnen*, 333 U.S. 591; *United States* v. *Stone & Downer Co.* 274 U.S. 225. See, Restatement, Judgments, sec. 70, Comment f (1948 Supp. pp. 340-1.)

But the cases which have thus restricted the full scope of *res judicata* in the tax field have not involved injunctions. That remedy was available here because the question involved was whether or not the imposition of the tax upon the plaintiffs was authorized by law. (*Owens-Illinois Glass*

*Co.* v. *McKibbin,* 385 Ill. 245.) Whatever may be said as to the inequity of a rigid application of *res judicata* in tax cases generally, it could hardly be thought equitable now to subject these plaintiffs to a retroactive tax extending back into the period during which the imposition of the tax was prohibited by injunction.

We hold, therefore, that the circuit court correctly ruled that its modification of the injunction should only operate prospectively. For the reasons stated, the orders of the circuit court are affirmed.

*Orders affirmed.*