(No. 34357.—

BEATRICE FOODS Co. *et al.,* Appellants, *vs.* RICHARD J. LYONS, Director of Revenue, *et al.,* Appellees.

*Opinion filed November 20, 1957.*

BLUM, JACOBSON & SHKOLER, PHILIP R. TOOMIN, and MICHAEL M. PHILLIPS, all of Chicago, for appellants.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and SAMUEL KANTER, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Naming the appropriate State officials as defendants, Beatrice Foods Company and others filed a complaint for an injunction in the circuit court of Cook County seeking relief from retailers' occupation tax as to certain sales of tangible personal property to the Federal government. The court sustained a motion to strike the complaint and, when the plaintiffs elected to abide by their pleading, dismissed the cause for want of equity. Since the revenue is involved, plaintiffs have appealed directly to this court for review.

The material facts, as admitted by the motion to strike the complaint, show that plaintiffs are suppliers who, in the course of their business, make sales of foodstuffs to the U. S. Government. Deliveries are made to various military installations within the State and, once delivered, the foodstuffs are utilized by the government in three different ways. First, some of it is prepared and served in mess halls operated by the military establishment to feed non-commissioned officers and enlisted personnel; second, some of it is prepared and served in mess halls operated to feed commissioned officers and civilian employees; and, third, some of it is sold in post exchanges whose customers are limited to service personnel and authorized civilians. These distinctions become significant in view of our construction that the entire scheme of the Retailers' Occupation Tax Act will make vendors liable for the tax on some sales but not liable on identical sales to the same purchaser. (*Belleville*

*Shoe Manufacturing Co.* v. *Department of Revenue,* 7 Ill.2d 574; *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55.) Without regard to these distinctions, which are made in the complaint, the defendants urge the sales in question carry liability for the tax. It is the plaintiffs' theory, however, that the Federal government is not, in any instances, the ultimate user and consumer of the food it purchases and that, in all cases, the food is resold to armed forces personnel for a valuable consideration. Accordingly, they deny liability for the tax.

Considering first the foodstuffs which are used by the government to stock post exchanges, the inescapable conclusion to be reached from this record is that food sold to the government for such purpose may not serve as a measure for the occupation tax. The retailers' occupation tax is imposed "upon persons engaged in the business of selling tangible personal property at retail." (Ill. Rev. Stat. 1955, chap. 120, par. 441.) A sale at retail, in turn, is defined by the statute as being "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." (Ill. Rev. Stat. 1955, chap. 120, par. 440.) In construing the language of the statute this court has found that a person is engaged in the business of selling at retail when he transfers tangible personal property (1) for use and consumption and (2) not for resale in any form as tangible personal property, and have held that both tests must be met to justify the imposition of the tax. By the same decisions it has been stated that the statutory definition of a sale at retail excludes a transfer of property for resale in any form as tangible personal property, for a valuable consideration. (*Material Service Corp.* v. *Hollingsworth,* 415 Ill. 284; *The Burrows Co.* v. *Hollingsworth,* 415 Ill. 202; *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55; *Fefferman* v. *Marohn,* 408 Ill. 542.) The defend-

ants in the instant case have admitted by their pleadings that a portion of the food sold by the plaintiffs is resold by the government in post exchanges for a valuable consideration to purchasers for use and consumption. They have thus conceded that the transfers of food by plaintiffs do not, in their entirety, meet the liability tests fixed by the statute, and also that such transfers, to the extent that the foodstuffs are resold in post exchanges, are precluded from being sales at retail by the exclusionary language of the act. Apart from this it is common knowledge, born of widespread civilian participation in military operations in our time, that post exchanges in reality are typical retail stores where tangible personal property of a wide variety, including necessities, luxuries and items both military and nonmilitary, is exchanged for monetary consideration. Plaintiffs' occupation of selling personal property to the government for such purposes is, thus, no different from its occupation of selling to any food store or restaurant which sells at retail to the general public. Upon the facts pleaded and admitted, therefore, plaintiffs should have been permitted to prove the percentage of its sales which embraced foodstuffs resold in post exchanges in such a manner as to relieve them of liability for the tax.

Plaintiffs urge that the food they sell for use in mess halls is likewise not a measure for the tax because it too is resold for a valuable consideration and because soldiers, rather than the purchasing government, are the ultimate consumers. Different methods of operation and regulation require that we consider the enlisted and officer messes separately. As regards enlisted personnel, we learn from the complaint and army regulations cited to us in argument that such personnel are paid a fixed sum each month and, in addition, receive food, clothing and shelter. If rations are not available in kind, as when traveling between military posts, or if an enlisted person is given permission to mess separately, he is entitled to receive a cash allowance in lieu

of rations. Because cash is allowed in such instances, plaintiffs conclude that enlisted personnel are in effect paying for food when they receive it in kind at the mess halls. We do not agree with such conclusion. Providing that enlisted personnel will be entitled to a cash allowance if rations are not received in kind is not, as we see it, an indication of buying and selling, but only an indication that our military agencies assume the responsibility of seeing that its members receive subsistence at all times. Simply because this duty is fulfilled by supplying cash instead of food where necessity and expediency demand it, it does not follow that when food itself is supplied, the government is selling it to enlisted personnel. Indeed, as shall be demonstrated shortly, the express language of the regulations which permit cash allowance rebuts the idea that food is sold to enlisted personnel. Cash is supplied to soldiers who are traveling for the simple reason there is no practical way of furnishing subsistence in kind, and it is allowed to enlisted personnel who are given permission to mess with their families because the government is relieved of the expense of providing food in such cases. (A.R. 35-1460, par. 7.) Neither circumstance leads to a conclusion that enlisted personnel are paying for their food when they receive it in kind.

Although not expressly stated, plaintiffs' theory implies that military agencies, as an incident to their primary function (See: *Continental Can Co.* v. *Nudelman,* 376 Ill. 446,) are selling food to enlisted personnel and that the latter pay in services, thus effecting a resale for a valuable consideration. We rejected this reasoning in *Belleville Shoe Manufacturing Company* v. *Department of Revenue,* 7 Ill.2d 574, where it was claimed the transfer of clothing by the government to military personnel was a resale within the contemplation of our tax act, and it is our opinion that it has no greater application here. As more fully discussed in the *Belleville case,* the Federal constitution, which speaks of *supporting* and *maintaining* armed forces, (U. S. Const.

art. I, sec. 8,) hardly admits to a concept that the members of the military and the government stand in the position of buyer and seller when the former are furnished with food, clothing and shelter. This is further borne out by Army Regulation 35-1460, relied upon by plaintiffs, which is titled: "Basic Allowance for Subsistence." In the section dealing with enlisted personnel it is provided: "The term 'rations in kind' includes cooked rations and meals *furnished* by the Government whether obtained by contract or otherwise." (Emphasis ours.) Again the section states: "The term 'being subsisted *at Government expense*' will be considered applicable to enlisted members who are subsisted in kind by the Government, and to enlisted personnel while they are in a travel status and are entitled to a travel per diem allowance in lieu of subsistence or to a mileage allowance." (Emphasis ours.) The use of the word "furnished" and the term "at Government expense," as well as the entire system of giving enlisted men rations in kind negates the thought that the transfer of food between the government and its soldiers is a resale. Moreover, the army methods of providing subsistence should not obscure the fact that what we are concerned with here is a construction of our own statute, or, more specifically, a determination of what the legislature meant by "resale" within its definition of a sale at retail. Most certainly the provisioning of troops at the government's expense is not a resale within the legislative intent. Thus whether appraised in the light of our statute or the army regulations cited to us, it is our opinion that the transfer of food to enlisted personnel is not a resale, and that the first liability test of the statute is met.

To support their view that the government does not "use or consume" the food they purchase for enlisted mess halls, plaintiffs suggest that it is only the sales of personal property to ultimate consumers, in this case the service personnel fed by the government, that are taxable under the

act. Such suggestion ignores *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55, where, after a thorough review of the statute and prior decisions, we held that a strict and narrow construction of the phrase "use or consumption" was not intended and, after noting that the legislature employed the terms in the disjunctive rather than the conjunctive, concluded as follows: "Considering the purpose of the Retailers' Occupation Tax Act, it is reasonable to assume the legislature intended the term 'use' to include any employment of a thing which took it off the retail market so that it was no longer the object of a tax on the privilege of selling it at retail." (413 Ill. at 67.) Employing the broad definition of "use and consumption" it is apparent that the sale of food to the government for the use of feeding enlisted personnel at government expense, meets the remaining statutory test for tax liability.

The allegations of the complaint with respect to foodstuffs served in commissioned officer messes are as follows: "In the case of commissioned officers and other personnel authorized to be on the premises of the government installation or agency, they are paid a fixed sum monthly, and are not supplied with food, but purchase and pay for their foodstuffs." Army regulations, in turn, reveal that all officers are entitled to a basic monthly subsistence allowance of $47.88. The only directive relating to the expenditure of such allowance is that when an officer messes with his organization, or is sick in the hospital, he is required to pay for his meals at rates prescribed by the Comptroller General. (See: A.R. 34-1460, par. 4.) We interpret the regulations to mean that the military discharges its duty of subsisting officers, not by furnishing food in kind, but by means of a cash allowance in all instances, and that an officer, unlike an enlisted person, is free to eat in a government mess only if he chooses. When this occurs, or when illness or duty makes it necessary for an officer to mess

with a government hospital or his military unit, he must pay for his meals at rates prescribed by the Comptroller General. By way of contrast the enlisted personnel, except under extraordinary circumstances, receive only rations in kind for which no rates are charged. Under the system of feeding officers, where no attempt is made to furnish rations in kind, they stand on no different footing than the civilian employees who are allowed to patronize the mess halls, thus hastening the conclusion that the military operates officer messes more for convenience than anything else and that a true resale of the food for a cash consideration is effected therein. This conclusion is not altered by the fact that officers are entitled to a monthly allowance for food, for nothing in the record establishes the relation between the allowance and the rates charged for meals.

Nor is the sale of food to the government for resale to officers and civilians one for "use or consumption" within the broad meaning of the act. A sale of food to the government for such purposes has no greater effect of removing that food from the retail market than does a sale to a public restaurant at which the officer may choose to spend his allowance, or a sale to a grocer who may resell to the officer's family. We find, therefore, that the percentage of plaintiffs' sales which relate to food resold to officers and civilian employees do not carry the burden of the tax.

To augment their contention that the taxes assessed by virtue of their sales to the government must fail in their entirety, plaintiffs argue that an amendment to section 2 of the tax act enacted in 1953, (Laws of 1953, p. 1310,) is unconstitutional insofar as it excludes from the gross receipts by which the tax is measured, sales of tangible personal property to the State, its political subdivisions, and charitable, religious and educational institutions. While plaintiffs insist that the amendment effects an arbitrary classification and an unlawful discrimination against the Federal government, and so alleged in their complaint, the

decree appealed from is completely barren of any indication that the chancellor either considered as passed upon such issues. The pleading of constitutional questions does not alone invest us with jurisdiction to consider them on appeal; the determination of such questions in the form of a ruling thereon by the court below must appear in the record, and where there is nothing in the order of the court which discloses that the constitutional questions were passed on, we will decline to consider them on appeal. (*People ex rel. Templeton* v. *Board of Education,* 399 Ill. 204; *City of Chicago Heights* v. *Public Service Co.* 408 Ill. 310.) Moreover, the complaint does not show, to our satisfaction, how plaintiffs are affected by the validity of the amendment they challenge. (See: 11 I.L.P. Constitutional Law, sec. 41.) We thus express no opinion on this issue sought to be injected in the case; however, it is to be observed that even if the amendment is invalid, the validity of the language under which the taxes were assessed in this case remains unaffected. Cf. *Myers* v. *Krajefska,* 8 Ill.2d 322; *Vissering Mercantile Co.* v. *Annunzio,* 1 Ill.2d 108.

We conclude that the plaintiffs do not incur the tax for the percentage of their sales which relate to food resold in post exchanges and officer messes, but that liability does attach to the extent that the food sold is used to furnish enlisted personnel with rations in kind. The decree of the circuit court of Cook County is reversed and the cause is remanded, with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded, with directions.*